**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **EDGARDO ENRIQUE ALVARENGA-AYALA** | **CASE NO. 1:26-CV-02653 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BRIAN ACUNA ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Before the Court is a Petition for the Writ of Habeas Corpus [Doc. No. 1] filed by Petitioner Edgardo Enrique Alvarenga-Ayala ("Alvarenga-Ayala"). Respondents, Brian Acuna, Markwayne Mullin, and Todd Blanche, in their official capacities (collectively, "Respondents"), filed a response [Doc. No. 6]. Alvarenga-Ayala filed a reply [Doc. No. 7].

After careful consideration of the parties' filings and applicable law, the Habeas Petition [Doc. No. 1] is **DENIED** and **DISMISSED WITHOUT PREJUDICE**.

## I. Background

Alvarenga-Ayala is a native and citizen of El Salvador.[1] He entered the United States near Rio Grande City, Texas, in September 2018 without being admitted or paroled.[2] The Department of Homeland Security ("DHS") charged him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and placed him in removal

[1] [Doc. No. 6-1, p. 1].
[2] [Id.].

proceedings.[3] Alvarenga-Ayala alleges that DHS later released him on his own recognizance and placed him under supervision.[4] On March 14, 2023, an Immigration Judge ordered Alvarenga-Ayala removed to El Salvador.[5] Alvarenga-Ayala appealed that decision to the Board of Immigration Appeals, where the appeal remains pending.[6] On June 17, 2026, Immigration and Customs Enforcement ("ICE") officers detained Alvarenga-Ayala when he appeared for a scheduled check-in and later transferred him to Winn Correctional Center.[7] He alleges that ICE did not identify any material change in circumstances or provide him an opportunity to contest his re-detention before a neutral decisionmaker.[8]

Alvarenga-Ayala filed this Petition under 28 U.S.C. § 2241 on July 22, 2026.[9] The issues have been briefed, and the Court is prepared to rule.

## II. Standard of Review

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2). "It is well established" that these protections also apply to aliens. See *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025).

[3] [Id.].
[4] [Doc. No. 1, ¶¶ 2, 19].
[5] [Doc. No. 6-2, p. 23].
[6] [Doc. No. 6-3, p. 1].
[7] [Doc. No. 1, ¶¶ 21–22].
[8] [Id. at ¶ 3].
[9] [Doc. No. 1].

Congress authorizes district courts to grant "writs of habeas corpus . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). For the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. ANALYSIS

Alvarenga-Ayala concedes that § 1225(b)(2)(A) governs his detention under binding Fifth Circuit precedent. His remaining claims turn on whether his prior release on recognizance nevertheless entitled him to additional process before ICE returned him to custody.

Respondents alternatively ask the Court to stay this matter pending the Fifth Circuit's *en banc* decision in *Sosnava Rodriguez v. Ortega*. Because existing precedent permits the Court to resolve Alvarenga-Ayala's claims, the Court declines to stay this matter and proceeds to the merits.

### A. Alvarenga-Ayala Is Subject to Mandatory Detention Under § 1225(b)(2)(A)

Section 1225(a)(1) provides that an alien present in the United States who has not been admitted is an "applicant for admission." 8 U.S.C. § 1225(a)(1). Section 1225(b)(2)(A), in turn, provides that an applicant for admission who is not clearly entitled to admission "shall be detained" for removal proceedings. *Id.* § 1225(b)(2)(A). In *Buenrostro-Mendez v. Bondi*, the Fifth Circuit held that an "applicant for admission" is necessarily "seeking admission" and therefore subject to

§ 1225(b)(2)(A)'s mandatory detention. 166 F.4th 494, 502 (5th Cir. 2026). Alvarenga-Ayala entered the United States without being admitted or paroled.[10] He concedes that therefore he falls within § 1225(b)(2)(A) under *Buenrostro-Mendez*.[11] Accordingly, because § 1225(b)(2)(A) compels detention, Alvarenga-Ayala has no substantive statutory entitlement to release.

**B. Alvarenga-Ayala's Due Process Claim Fails**

Alvarenga-Ayala separately argues that his prior release created a protected liberty interest that DHS could not terminate without constitutionally adequate process.[12] Even assuming his prior release created a protected liberty interest, due process does not require a hearing to establish facts that are immaterial under the governing substantive law. *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7–8 (2003). Alvarenga-Ayala seeks a hearing at which DHS would identify the grounds for re-detention and establish a material change in circumstances, a release-condition violation, or another legally sufficient basis for withdrawing his prior release.[13]

Alvarenga-Ayala relies on *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Young v. Harper*, 520 U.S. 143 (1997). In *Morrissey*, the parolee's continued liberty depended on whether he violated the conditions of parole, so the Supreme Court required process to determine that factual question. 408 U.S. at 482, 487–89. *Young* applied the same principle to a conditional-release program that was the functional equivalent of parole. 520 U.S. at 152–53. Alvarenga-Ayala acknowledges that those

[10] [Doc. No. 6-1, p. 1].
[11] [Doc. No. 1, ¶ 5].
[12] [Id. at ¶¶ 37–40].
[13] [Id. at ¶ 42]

criminal-supervision cases do not control here and instead relies on them by analogy.[14]

Alvarenga-Ayala also relies on *Oumar v. Warden Central Louisiana ICE Processing Center*, Civil Action No. 26-1885 (W.D. La. July 28, 2026), which applied similar reasoning to re-detention following release on recognizance.[15] The Court declines to follow *Oumar*. Neither the statute nor the regulation governing discretionary release expressly makes continued liberty contingent on changed circumstances, dangerousness, flight risk, or compliance with release conditions. See 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(c)(9). *Oumar* therefore derives from the fact of prior release procedural protections that the text itself does not provide. More importantly, the facts Alvarenga-Ayala seeks to test at such a hearing do not determine whether his present detention is required under § 1225(b)(2)(A).

*Mathews v. Eldridge* does not require a different result. *Mathews* considers the private interest at stake, the risk of erroneous deprivation and probable value of additional safeguards, and the Government's interests and burdens. 424 U.S. 319, 335 (1976). Alvarenga-Ayala argues that his liberty interest is substantial, that detention without notice or a hearing creates a high risk of error, and that an individualized review would impose only a modest burden.[16] His interest in physical liberty is substantial. But the hearing he seeks would determine whether circumstances changed, whether he complied with his release conditions, or whether

[14] [Id. at ¶ 40].
[15] [Doc. No. 7, pp. 3–4].
[16] [Id. at pp. 4–5].

he presently poses a danger or flight risk.[17] None of those facts determines whether he is subject to detention under § 1225(b)(2)(A). Once his status as an unadmitted applicant for admission is established, the statute requires detention regardless of those individualized circumstances. A hearing into them would therefore be a "bootless exercise." *Doe*, 538 U.S. at 8. The Due Process Clause does not require such a proceeding.

**C. Alvarenga-Ayala's Remaining Claims Fail**

Alvarenga-Ayala also alleges that Respondents failed to comply with the statutory and regulatory procedures governing revocation of his prior release.[18] Under *United States ex rel. Accardi v. Shaughnessy*, an agency generally must follow regulations governing the exercise of its discretion. 347 U.S. 260, 267–68 (1954). But *Accardi* does not create procedural requirements absent from the governing regulations.

Alvarenga-Ayala identifies no statute or regulation requiring the pre-deprivation hearing he seeks. His reply cites § 1226(a)–(b) and 8 C.F.R. § 236.1 generally, but those provisions do not prescribe such a hearing before re-detention. Even assuming some procedural defect occurred when DHS terminated his earlier release, that defect would not establish that his present detention is unlawful. The question in a Habeas case is whether Alvarenga-Ayala may lawfully be detained now. See *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923). Because his

[17] [Doc. No. 1, ¶ 42].
[18] [Id. at ¶¶ 45–48].

present detention is independently required under § 1225(b)(2)(A), a defect in the termination of his earlier discretionary release would not entitle him to release now.

## IV. Conclusion

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Petition for Writ of Habeas Corpus [Doc. No. 1] is **DENIED** and**DISMISSED WITHOUT PREJUDICE**.

MONROE, LOUISIANA, this 8th day of October, 2026.

Terry A. Doughty
United States District Judge